# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ERICA WOODS | § | |
| Plaintiff, | § | |
| | § | **CASE NO. 13 CV 1715** |
| | § | |
| v. | § | |
| PRIME UNITED MARKETING, | § | **JUDGE LEINENWEBER** |
| EVOLUTIONARY ENTERPRISES, INC., | § | |
| and SPARK ENERGY | § | |
| | § | |
| Defendants. | | |

## <u>DECLARATION OF BRIAN REAM</u>

I, Brian Ream, hereby declare as follows:

1. My name is Brian Ream. I am under no legal disability. I have personal knowledge of the facts stated in this Declaration.

2. I am currently employed as a Manager for Channel Marketing at Spark Energy, Inc. ("Spark Energy"). I have operated in this capacity since February 28, 2011and in this capacity I am familiar with the operations of Spark Energy. Specifically, I am familiar with Spark Energy's personnel records and contracts, including the files relating to Spark Energy's contract with Evolutionary Enterprises, Inc. ("EEI") to provide marketing and sales services to Spark Energy.

3. Spark Energy is a nationwide provider of electricity and natural gas with its principal offices in Houston, Texas. Spark Energy is incorporated under the laws of the State of Texas. Spark Energy provides residential and commercial energy services to consumers in various states across the country.

4. Although Spark Energy is a nationwide company with multiple offices, it does not directly employ any individuals within the Chicago, Illinois area, nor did in March 2012. Spark Energy does not directly employ anyone in the Commonwealth Edison (ComEd) market, nor did in March 2012. Specifically, Spark Energy has never employed, in any capacity, the following individuals: 1) Daniel Abshari or Daniel Scott; 2) Joe Russell; 3) Mercedes Akins; 4) Maumin Crowder. Further, during the period of March 2012, Spark Energy did not employ any person in the Chicago area by the name of "Monique James," "Guy," or "Miss B." A thorough search of Spark Energy's employee data base confirms this declaration.

5. Like many other companies that employ third-party sales and marketing firms to sell their products, Spark Energy contracts with third-party service providers to perform certain

1

marketing and sales services, including door-to-door sales, marketing, and public relations. Spark Energy has hired companies in various states to provide independent marketing and sales services. It is common practice for Spark Energy to hire a variety of outside independent marketing and sales firms to help facilitate its business needs particularly with respect to the sale of its utility services. Thus, EEI is in no way the only marketing and sales firm that Spark Energy has relied upon to help sell its services.

6. In the instant case, Spark Energy contracted with EEI to provide such independent marketing services. In August 2011, to facilitate Spark Energy's residential and commercial energy business in the Chicago, Illinois area, Spark Energy entered into a Direct Sales Agreement ("Sales Agreement") with EEI pursuant to which EEI agreed to provide direct marketing and services to further Spark Energy's business plan. Pursuant to the Sales Agreement, EEI agreed to provide its marketing and sales services to Spark Energy on an independent contractor basis and to furnish all personnel who were required for the project.

7. The specific terms of the Sales Agreement provided that EEI would create a client account for the Spark Energy client project ("Spark Energy Client Project"). EEI would provide its own network of sales representatives on a direct sales basis. The Sales Agreement placed control and management power in the hands of EEI, who per the terms of the Agreement had control over the sales and training of EEI employees or contractors. The Sales Agreement thus established an arm's length relationship between EEI and Spark Energy. Not only did the Sales Agreement provide for an arm's length relationship, Spark Energy and EEI maintained this arm's length relationship throughout the duration of their contractual relationship. In exchange for EEI's services, Spark Energy would pay weekly invoices submitted to it by EEI. The payment terms allowed Spark Energy to pay EEI for all marketing services within thirty days (30) after the submission of EEI's invoice to Spark Energy. **Attached as Exhibit A is a true and correct copy of two March 2012 Invoices from EEI to Spark Energy.**

8. In the Sales Agreement, Spark Energy is referred to as the "Company" and EEI is referred to as "Direct Seller." **Attached as Exhibit B is a true and correct copy of the Sales Agreement**. The terms of the Sales Agreement provide in relevant part under Section 1:

   a. **Relationship of the Parties.**

   b. Company hereby authorizes Direct Seller to generate Sales for the Program through the Network within such parts of the geographic area services by Company as Company directs, in writing, from time to time (the "Territory") . . .

   c. The Parties hereby acknowledge and agree that their relationship **is one of independent contracting parties** and that this Agreement does not create a general agency, joint venture, employment relationship, partnership or franchise between them. No party has the authority to make business decisions for or sign for the other Party, to respond on the other Party's behalf or in any way represent itself as having decision making authority beyond the rights set forth herein or to

represent the other Party in any way without the Party's express prior written approval and authority.

d. Notwithstanding anything to the contrary herein, it is acknowledged, confirmed, and agreed that Direct Seller shall be, and shall be deemed to be, an Independent contractor for all intents and purposes, including, without limitation, federal, state and local taxation. Direct seller shall have full control of its activities and the right to exercise independent judgment as to the time, place, and manner of soliciting Sales and providing Services for the Program. Notwithstanding the foregoing, Direct Seller shall comply at all times with Company's sales policies and practices, as directed by Company, and which sales policies and practices may be amended, from time to time, by Company. Direct Seller's provision of the Services shall be subject to Direct Seller's obligations, as detailed herein. Except as otherwise expressly provided herein, Direct Seller shall pay all expenses in connection with performing its obligations hereunder and shall not incur any indebtedness on behalf of Company.

e. As applicable, Direct Seller shall be responsible for any salary or other benefits to its employees and the Network; will withhold all appropriate tax, social security, Medicare and other deductions and payments; provide workers compensation insurance coverage for its employees and the Network; and make all appropriate unemployment tax payments. In no event shall Company be responsible for any of the foregoing with respect to either Direct Seller or the network. Direct Seller will indemnify and defend Company from all claims arising out of or relating to Direct seller's failure to withhold, deduct or make any payments under this section.

9. Spark Energy and EEI are separate legal entities that are wholly unaffiliated. EEI is not a subsidiary of Spark Energy or connected to the corporate structure of Spark Energy in any manner. Spark Energy and EEI do not share management teams, they do not share common ownership, and they are not under the same financial control. Further, Spark Energy and EEI are not part of a single integrated enterprise that shares ownership or managerial control. In sum, Spark Energy and EEI are completely separate, unaffiliated entities who entered into an arm's length contractual relationship to accomplish their respective business goals.

10. Spark Energy and Prime United are separate legal entities that are wholly unaffiliated. Prime United is not a subsidiary of Spark Energy or connected to the corporate structure of Spark Energy in any manner. Spark Energy and Prime United do not share management teams, they do not share common ownership, and they are not under the same financial control. Further, Spark Energy and Prime United are not part of a single integrated enterprise that shares ownership or managerial control.

11. Regardless of whether EEI and Prime United had a contractual relationship, Spark Energy and Prime United never executed any agreements or entered into a business arrangement, formal or otherwise, with one another. As mentioned above, Spark Energy

3

was not even aware that EEI had contracted with or entered into a contractual relationship with Prime United until Woods filed her charge of discrimination with the EEOC.

12. In May 2012, EEI contracted with Erica Woods to provide marketing and sales services. Woods began work as an independent contractor for EEI, providing marketing and sales services as an independent contractor on the Spark Energy Client Project. Woods was never hired as an employee of EEI or Spark Energy. Woods and EEI entered into an Independent Contractor Agreement ("Independent Contractor Agreement") whereby Woods was paid by EEI as a commission-based contractor. Spark Energy was never a party to the negotiations of the Independent Contractor Agreement, nor was Spark Energy a signatory to the Independent Contractor Agreement. Woods was never directly or indirectly employed in any capacity by Spark Energy. Spark Energy and its personnel did not interview, hire, train, fire, or exercise any day-to-day direction or control over Woods or any other employee or contractor of Prime United or EEI. Spark Energy never paid Woods a salary or commission, never directed money to EEI to pay its employees or contractors salaries. Spark Energy was not responsible for developing Woods's skills, or for training Woods. Further, Spark Energy did not dictate the length of Woods's job commitment, nor did Spark Energy instruct Woods as to any expectations in this regard.

13. Spark Energy did not draft, generate, or approve of the Independent Contractor Agreement, the EEI Harassment and Discrimination Policy, the Code of Ethics for Independent Contractors, the Drug-Free Workplace Policy, the Drug and/or Alcohol Testing Consent Form, or the Cruise to Success Agreement.

14. Woods did not work at, was not interviewed at, and was not based out of Spark Energy's facilities or worksites, which are primarily located in Texas, and none of which are in Illinois. Further, Woods has never been invited to visit a Spark Energy facility. Thus, Spark Energy had no control or influence over employment decisions relating to Woods.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this __28th__ day of October, 2013 at Houston, Texas.

Brian Rearm

4